JUDGE BRICCETTI

**United States District Court**
**Southern District of New York**

12 CV 3421

--------------------------------------x

Joseph Bonadio

           **Plaintiff,**

      vs.

PHH Mortgage Corporation

           **Defendant.**

--------------------------------------x

**COMPLAINT**

Jury Trial Demanded

Plaintiff Joseph A. Bonadio, through his attorneys, states as follows:

<u>Nature of the Action</u>

1.   This is a racketeering action arising out of Defendant's systematic fraud to mislead homeowners in connection with modification of residential mortgages in order to destroy their credit and usurp their homes.  Defendant nonchalantly failed to even bother setting up a proper system with adequately trained staff to meet its obligations under the law.  Instead, Defendant misled Mr. Bonadio into defaulting on his mortgage, misled him into repeatedly sending information concerning his loan modification application by fostering the mistaken belief that Defendant was considering, and would consider, his application in good faith.  After giving a prolonged runaround to Mr. Bonadio, Defendant belatedly rejected his modification application; meanwhile, Defendant destroyed Mr. Bonadio's credit, effectively nullified his equity in his home, damaged his reputation, and has threatened to proceed with foreclosure.  On these and related grounds, Mr. Bonadio asserts claims under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1961-1968, The Real Estate Settlement Procedures Act, 12 U.S.C. §2601, *et seq*, The Equal Credit Opportunity Act

("ECOA"), 15 U.S.C. §1691 *et seq*, N.Y. Gen. Bus. L, Section 349, and the common law, and seeks compensatory and punitive damages, and equitable and injunctive relief in addition to attorneys' fees and expenses incurred in connection with this litigation.

Parties

2.    Mr. Bonadio is a resident of the State of New York.  At all relevant times, he is and has been the owner of his home at 410 Rich Avenue, Mount Vernon, New York 10552.

3.    Defendant PHH Mortgage Corporation is a New Jersey corporation authorized to do business in New York with its principal offices at 1 Mortgage Way, Mt. Laurel, New Jersey 08054.  Defendant claims to be "one of the top five originators of retail residential mortgages in the United States." Www.phhmortgage.com. Upon information and belief, Defendant is also in the business of servicing mortgages for other lenders, although Defendant is not licensed as a mortgage loan servicer by the New York State Department of Banking.  Upon information and belief, Defendant is and was, at all relevant times, a "creditor" within the meaning of ECOA, 15 U.S.C. §1691(e), and within the meaning of RESPA, 15 U.S.C. §1602(g).

Jurisdiction

4.    This Court has jurisdiction over this case pursuant to RICO, 18 U.S.C. §1964(c), ECOA, 15 U.S.C. §1691e, RESPA, 12 U.S.C. §2614, and federal question, 28 U.S.C. §§1331, 1337.  Supplementary jurisdiction exists over Mr. Bonadio's State law claims under 28 U.S.C. §1367.

## Statement of Facts

5.   At all relevant times, Mr. Bonadio owned his residence in Mount Vernon, New York.

6.   In 2006, Mr. Bonadio was misled by a financial adviser from Merrill Lynch into refinancing his home mortgage with an adjustable rate mortgage. Mr. Bonadio was not given, and does not have, the originals or signed copies of the closing documents concerning that refinance.

7.   While the mortgage was originated by Merrill Lynch Credit Corporation in 2006, public records reveal that it was registered in the name of MERS.

8.   Upon information and belief, the underlying note was assigned and/or reassigned to third party or parties. The current holder of the underlying note is not known.

9.   Mr. Bonadio never received any notice of assignment of the note underlying the mortgage.

10.  Upon information and belief, Defendant has been the loan servicer for the said mortgage. At all relevant times, it received and encashed Mr. Bonadio's monthly mortgage payments.

11.  In January 2010, Mr. Bonadio faced financial difficulties. On or about January 31, 2010, Mr. Bonadio called up Defendant's toll free number, and spoke to Defendant's representative. Mr. Bonadio explained his financial difficulties, and inquired about a loan modification. Defendant's representative asked Mr. Bonadio whether he was current in his mortgage payments. When Mr. Bonadio answered affirmatively, Defendant's representative categorically told him that in such case, he would not qualify for a loan modification. For a loan modification, Defendant's representative informed Mr. Bonadio, he had to default on his

mortgage monthly payments.

12.    Defendant's representative's representation and advice to Mr. Bonadio was false and misleading.

13.    Unaware of that falsity, Mr. Bonadio started defaulting on his mortgage payments in early 2010.

14.    By letter dated March 10, 2010, Defendant sent Mr. Bonadio a notice of default.

15.    Thereafter, by letter dated March 22, 2010, Defendant sent Mr. Bonadio a notice of intent to foreclose.

16.    Mr. Bonadio called Defendant and obtained an application for loan modification.

17.    On or about April 1, 2010, Mr. Bonadio duly filled in the application for loan modification, and sent it to Defendant with all supporting documents. However, Defendant never bothered acknowledging receipt or responding.

18.    For the ensuing eight months, Mr. Bonadio repeatedly inquired about the status of his application. In response, Defendant's representatives repeatedly told him that his application was in "review" or in "staging."  Although Defendant never sought any information from Mr. Bonadio, he dutifully updated his financial situation on a monthly basis to facilitate Defendant's review of his loan modification application.

19.    On several occasions when Mr. Bonadio called Defendant, he was unable to get across to Defendant for several hours, and when he did, he was kept on hold for long periods before being able to talk to Defendant's representative.

20.    Defendant's representatives routinely appeared to be uninformed and unhelpful, and on many occasions, squarely contradictory of each other.  Different departments of Defendant did not know what other departments knew or were

doing in connection with Mr. Bonadio's loan modification application.

21.   Finally, in December 2010, Defendant's representative informed Mr. Bonadio that his application for loan modification had been denied, because he did not "qualify" either in May or in December 2010.

22.   Phone conversations with Defendant's representative revealed that Defendant's representative was completely misinformed about Mr. Bonadio, and did not know elementary facts about his mortgage and its terms.

23.   Defendant subsequently informed Mr. Bonadio that the denial of his application for loan modification had been based upon Mr. Bonadio's credit report from a credit reporting agency.

24.   In fact, as Mr. Bonadio discovered later, Defendant had pulled Mr. Bonadio's credit report on May 15, 2010, about seven months before Defendant informed him of its denial of his application for loan modification.

25.   Defendant's nonchalance to its legal obligations was also evident in its failure to comply with its RESPA obligations. Thus, by letter dated August 14, 2011, Mr. Bonadio sent a qualified written request under Section 2605(3) of RESPA, demanding information concerning the loan, its servicing, and charges thereon. Defendant failed and neglected to respond, whereupon, Mr. Bonadio sent another request on September 2, 2011, on September 26, 2011, and several times thereafter.  Mr. Bonadio sent at least seven such qualified written requests.

26.   Defendant did not bother responding substantively to Mr. Bonadio's qualified written requests.

27.   Further, Defendant misleadingly informed him at various times that the loan was owned by GMAC, by Merrill Lynch, by Bank of America through merger with

Merrill Lynch, by Residential Funding Corporation, GMAC-RFC, and PHH.

28. Mr. Bonadio's telephone inquiries revealed that in fact, GMAC was not the owner of the note. As of today, Defendant has not informed Mr. Bonadio, and Mr. Bonadio does not know, the identity of the owner of the note underlying the mortgage.

29. As a result of Defendant's aforesaid fraudulent conduct, Mr. Bonadio's credit has been ruined, his equity in his own home substantially diluted if not destroyed, and he has been subject to mental anguish, annoyance, anxiety, embarrassment, emotional distress, loss of reputation, stress, and tension. Mr. Bonadio has sustained significant damages, for which Defendant is liable.

30. Defendant's misconduct towards Mr. Bonadio is far from isolated. While it is obvious that Defendant does not even have a system in place to provide proper information to homeowners and not mislead them, upon information and belief, and upon search of the internet, it is clear that Defendant routinely misleads homeowners, destroying lives and homes in the process.

COUNT I

(RICO, 18 U.S.C. §1962( c))

31. The contents of the above paragraphs are incorporated herein by reference as if fully set forth herein.

32. The association of Defendant, certain mortgage lenders, mortgage brokers, salesmen and others whose identities are known only to Defendant at this time (cumulatively, the "Conspirators"), constituted an enterprise within the meaning of 18 U.S.C. §1961(c), which enterprise was engaged in, and whose activities affected, interstate and foreign commerce. This enterprise was continuous in that

it lasted for more than two years, had an ascertainable structure, and was distinct from the predicate offenses alleged here.

33. Defendant is a person within the meaning of 18 U.S.C. §1961(3) and separate from the enterprise.

34. Defendant participated, and conspired with others whose identities are known only to Defendant at this time to participate, in the affairs of the aforementioned enterprise through a pattern of racketeering activity, as more fully set forth below, all in violation of 18 U.S.C. §§ 1962(c).

<u>Mail Fraud, Violations of 18 U.S.C. §1341</u>

35. Defendant and the other members of the enterprise, having devised or intending to devise the scheme or artifice to defraud, and/or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, for the purpose of executing such scheme or artifice or attempting so to do, placed in post office(s) or authorized depository for mail matter, several letters and/or packages to be sent or delivered by the Postal Service, and/or took or received therefrom, letters and/or packages, or knowingly caused to be delivered by mail or such carrier according to the direction thereon, or at the place at which it was directed to be delivered by the addressee such letters and/or packages. Specifically,

    a.   On or about March 10, 2010, Defendant, through the use of interstate mails, mailed a letter to Mr. Bonadio;

    b.   On or about March 22, 2010, Defendant, through the use of interstate mails, mailed a letter to Mr. Bonadio;

    c.   On or about the 1st of January 2010, and the 1st of every month thereafter

until October 2010, Defendant through the use of interstate mails, mailed a letter to Mr. Bonadio purporting to be the monthly invoice towards installment payment on the alleged mortgage loan;

d.    On or about April 8, 2010, Defendant mailed a letter to Mr. Bonadio through the use of interstate mails;

e.    On or about April 14, 2010, Mr. Bonadio, through the use of interstate mails, mailed a letter to Defendant;

f.    On or about April 15, 2010, Defendant, through the use of interstate mails, mailed a letter to Mr. Bonadio;

g.    On or about September 26, 2011, Mr. Bonadio, through the use of interstate mails, mailed a letter to Defendant;

h.    On or about February 25, 2011, Mr. Bonadio, through the use of interstate mails, mailed a letter to Defendant;

i.    On or about October 11, 2011, Defendant, through its attorneys, mailed a letter to Mr. Bonadio through the use of interstate mails; and

j.    On or about March 12, 2011, Mr. Bonadio, through the use of interstate mails, mailed a letter to Defendant.

36.   Each of the aforesaid mailings were, were intended to be, and were foreseeably in furtherance of the racketeering enterprise at issue.

37.   Each participant in the enterprise knew, expected, and intended that the facilities of interstate mail would be used in furtherance of the racketeering scheme, and that such use was an essential part of the scheme.

Wire Fraud, Violations of 18 U.S.C. §1343

38.    Defendant and other members of the enterprise, having devised or intending to devise the scheme or artifice to defraud, and/or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire communication in interstate commerce, sounds, phone calls and messages for the purpose of executing such scheme or artifice. Specifically,

    a.    On January 31, 2010, Mr. Bonadio in New York, made a phone call over the interstate wires to Defendant in New Jersey;

    b.    On or about April 1, 2010, Mr. Bonadio in New York, faxed the loan modification documents over the interstate wires to Defendant in New Jersey;

    c.    On or about April 12, 2012, Ms. Dayna Beyer from Ohio, on behalf of Mr. Bonadio, made a phone call over the interstate wires to Defendant in New Jersey to get an update on Mr. Bonadio's loan modification application;

    d.    On or about May 10, 2010, Ms. Dayna Beyer from Ohio, and Mr. Bonadio from New York, made a phone call over the interstate wires to Defendant in New Jersey to get an update on Mr. Bonadio's loan modification application;

    e.    On or about May 17, 2010, Ms. Dayna Beyer from Ohio, and Mr. Bonadio from New York, made a phone call over the interstate wires to Defendant in New Jersey to get an update on Mr. Bonadio's loan modification application;

    f.    On or about June 17, 2010, Ms. Dayna Beyer from Ohio, and Mr. Bonadio

from New York, made a phone call over the interstate wires to Defendant in New Jersey to get an update on Mr. Bonadio's loan modification application;

g.  On or about July 6, 2010, Ms. Dayna Beyer from Ohio, and Mr. Bonadio from New York, made a phone call over the interstate wires to Defendant in New Jersey to get an update on Mr. Bonadio's loan modification application;

h.  On or about July 17, 2010, Ms. Dayna Beyer from Ohio, on behalf of Mr. Bonadio, made a phone call over the interstate wires to Defendant in New Jersey to get an update on Mr. Bonadio's loan modification application;

i.  On or about Aug 2, 2010, Ms. Dayna Beyer from Ohio, on behalf of Mr. Bonadio, made a phone call over the interstate wires to Defendant in New Jersey to get an update on Mr. Bonadio's loan modification application; and

j.  On or about September 2, 2010, Ms. Dayna Beyer from Ohio, on behalf of Mr. Bonadio, made a phone call over the interstate wires to Defendant in New Jersey to get an update on Mr. Bonadio's loan modification application.

39.  The contents of these phone conversations, and the misrepresentations made by Defendant, have been set forth above.

40.  Each participant knew, expected, and intended that the facilities of interstatetelecommunication and phones would be used in furtherance of the racketeering scheme, and that such use was an essential part of the scheme.

41.  The Conspirators, wilfully and with intent to mislead Mr. Bonadio, concealed the

material facts from him, as detailed above.

42.   The material misrepresentations were made by Conspirators to Mr. Bonadio, and/or to Ms. Beyer who was acting on behalf of Mr. Bonadio.

43.   Mr. Bonadio relied upon such information, and was unaware of the facts. His reliance was, under the circumstances, reasonable.

Pattern of Racketeering Activity

44.   The aforesaid acts had the same or similar purposes, results, participants, victims, and/or methods of commission, and were otherwise interrelated by distinguishing characteristics and were not isolated events. The pattern of racketeering activity engaged in by Defendant consisted of a scheme executed by the aforementioned Conspirators from January 2010 and continuing to date, to mislead Mr. Bonadio to extinguish his equity in his home. That pattern included multiple predicate acts of mail fraud and wire fraud.

45.   The racketeering acts identified hereinabove were related to one another and formed a pattern of racketeering activity in that they were in furtherance of a common goal, including the goal of fraudulently inducing Mr. Bonadio into defaulting on his mortgage so that Defendant could destroy his equity in his home and appropriate it.

46.   The acts of racketeering activity extended over a substantial period of time from 2010, and possibly earlier, and continue to this day. They were sufficiently continuous to form a pattern of racketeering activity.

47.   Defendant participated in the scheme through itself and its representatives, salesmen, attorneys, notaries, employees and officers, and others whose identities are known only to Defendant at this time.  Defendant benefitted enormously by

the profits it made, and the various fees derived through the fraudulent scheme at issue. The Conspirators knew, enabled, and actively participated in the racketeering scheme at issue.

48. Defendant engaged in a pattern of racketeering activity consisting of wire and mail fraud, and aiding and abetting wire and mail fraud. The predicate acts occurred over a period of well over three years. Defendant received income from these patterns in the form of extortionate service and other charges and late fees, attorneys' fees and disbursements. Defendant disbursed these funds amongst itself and its conspirators in a manner known only to them.

49. Defendant's participation was critical to the racketeering scheme. It enabled, conducted, maintained, aided, and abetted the racketeering scheme by:

   a.   Misleading Mr. Bonadio into defaulting on his mortgage;

   b.   Consistently and systematically misleading Mr. Bonadio with respect to modification of his loan and his application therefor;

   c.   Supervising, conducting, and monitoring the conduct of the fraudulent scheme;

   d.   Concealing the scheme from Mr. Bonadio;

   e.   Encouraging third parties to participate in the fraudulent scheme;

   f.   Wilfully violating, or being recklessly indifferent to, mandatory requirements of federal law and procedure concerning racketeering, predatory lending, mail fraud, wire fraud, and the common law of fraud;

   g.   Wilfully violating or being recklessly indifferent to its legal obligations to ensure that homeowners such as Mr. Bonadio were not misled; and

   h.   Wilfully violating or being recklessly indifferent to their legal obligations

to provide "adverse action" notice under ECOA.

50. The precise role played by each Conspirator is known only to Defendant and the other participants at this time. Such information, and evidence concerning their participation, is exclusively within the possession and knowledge of Defendant.

51. Mr. Bonadio has been injured in his business or property by reason of Defendant's violation of 18 U.S.C. §1962(c). As a direct and proximate result of these violations, Mr. Bonadio has, *inter alia*, paid sums he should never had to pay, been saddled with unwarranted liabilities, and had to expend time and resources in protecting his rights. In addition, his credit rating has been ruined, and his equity in his home almost destroyed.  Further, Mr. Bonadio has suffered mental anguish, loss of reputation, and the other damages listed elsewhere.

52. By reason of this violation of 18 U.S.C. §1964(c), Mr. Bonadio is entitled to recover from Defendant three times his damages plus pre- and post- judgment interest, costs and attorneys' fees. In addition, he is also entitled to the injunctive and declaratory reliefs.

## COUNT II

### (RICO, Violation of 18 U.S.C. § 1962(d))

53. The contents of the above paragraphs are incorporated herein by reference as if fully set forth herein.

54. In violation of 18 U.S.C. § 1962(d), Defendant and others whose identities are known only to Defendant at this time conspired to violate the provisions of 18 U.S.C. §1962(c) in that, beginning no later than January 2010 and continuing through today, they knowingly agreed and conspired to conduct or participate, directly or indirectly, in the affairs of an enterprise through the pattern of

racketeering activity described above. The volume and frequency of the transactions, and the continuance of the scheme at issue for over 4 years, could not have occurred without the consent and knowing connivance of Defendant and other Conspirators.

55. As part of and in furtherance of their conspiracy, Defendant agreed to and conspired in the commission of the many predicate acts described above, with the knowledge that these acts were in furtherance of that pattern of racketeering activity. As part of and in furtherance of their conspiracy, Defendant agreed to and did commit at least two predicate acts of racketeering.

56. Mr. Bonadio has been injured in business or property by reason of defendant's violations of 18 U.S.C. S 1962(d).

57. Such injury occurred as a direct and proximate result of each Defendant's violations.

58. By reason of Defendant's violation of 18 U.S.C. §1964(d), Mr. Bonadio is entitled to three times his damages plus interest, costs and attorneys' fees. In addition, he is also entitled to equitable, and injunctive and declaratory reliefs.

COUNT III

(Deceptive Business Practices - Section 349, N.Y.G.B.L.)

59. Mr. Bonadio repeats and realleges each and every allegation above and incorporates same herein.

60. Defendant committed and/or engaged in one or more of the following acts or conduct and/or made the several misrepresentations and/or deceptive practices, including without limitation:

    a.    Falsely representing to Mr. Bonadio that he would not "qualify" for a loan

modification unless he defaulted on his mortgage;

b.     Inducing Mr. Bonadio, with false representations, to default on his mortgage;

c.     Misrepresenting to Mr. Bonadio that his application for a loan modification would be considered in good faith;

d.     Repeatedly misleading Mr. Bonadio into the status of his loan modification application;

e.     Misleading Mr. Bonadio with respect to the ownership of the loan;

f.     Failing to timely and validly make all material disclosures under federal law; and

g.     Denying Mr. Bonadio a loan modification under false pretenses.

61.   All of the above misrepresentations, acts and/or conduct by Defendant involved material elements of the transaction between the parties and were unfair, illegal, false, deceptive and/or misleading.

62.   Additionally, such representations were likely to, and in fact did, harm, deceive or mislead Mr. Bonadio who was acting reasonably.

63.   The conduct and actions described herein are directed at the general public and have a broad impact on consumers at large and are not isolated or unique to this transaction between the parties.

64.   The aforementioned conduct constitutes deceptive business practices, in violation of General Business Law, Art. 22-A, §349. As a result of the Defendant's breach, Mr. Bonadio has sustained damages which he is entitled to recover from Defendant.

65.   Mr. Bonadio is entitled to recover costs and attorney's fees from the Defendant

pursuant to NYGBL §349(h) and New York General Obligations Law §5-327.

## COUNT IV

### (Deceptive Business Practices - Section 349, N.Y.G.B.L. - Injunction)

66.  Mr. Bonadio repeats and realleges each and every allegation above and incorporates the same herein.

67.  Pursuant to GBL §349(h), Mr. Bonadio is entitled to an injunction barring Defendant from:

  a.  Inducing consumers, with false representations, to default on their mortgages;

  b.  Misrepresenting to consumers that their application for a loan modification would be considered in good faith;

  c.  Misleading consumers into sending documents ostensibly in furtherance of applications for a loan modification;

  d.  Misleading consumers with respect to the ownership of the loan underlying such consumer's mortgage;

  e.  Failing to timely and validly make all material disclosures under federal law; and

  f.  Denying consumers a loan modification under false pretenses.

68.  In addition to damages, Mr. Bonadio is entitled to recover costs and attorney's fees from the Defendant pursuant to GBL §349(h) and GOL §5-327.

## COUNT V

### (Equal Credit Opportunity Act, 15 U.S.C. §1691 et seq)

69.  Mr. Bonadio repeats, realleges and incorporates by reference the allegations above as if fully set forth herein.

70. Mr. Bonadio was an "applicant" for credit under the ECOA, 15 U.S.C. §1691a(b).

71. Mr. Bonadio made an oral and/or written request for an extension of credit that was in accordance with procedures established by Defendant for the type of credit requested. Reg. B, 12 C.F.R. §202.2(f); *see* Official Staff Commentary §202.2(f)-1.

72. Defendant denied Mr. Bonadio's application, and/or belatedly offered credit on terms substantially different from that which Mr. Bonadio sought.

73. Nevertheless, Defendant did not provide the written "adverse action" notice to Mr. Bonadio as required under ECOA. 15 U.S.C. §1691(d)(2); Reg B, 12 C.F.R. §202.9(a)(1)(I).

74. Under federal law, Defendant was obligated to give such adverse action notice within thirty days; further such notice must contain a statement of the reasons for the adverse action taken by the creditor. 15 U.S.C. §1691(d)(1), (2).

75. Defendant's aforesaid failure to provide a timely written rejection notice is an actionable violation of the ECOA.

76. By virtue of the foregoing, Defendant violated the Equal Credit Opportunity Act,15 U.S.C. §§1691-1691f.

## COUNT VI

### (Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq)

77. Mr. Bonadio repeats, realleges and incorporates by reference the allegations above as if fully set forth herein.

78. Mr. Bonadio repeatedly served upon Defendant a qualified written request as defined under RESPA, 12 U.S.C. §2605.

79. Defendant repeatedly failed to respond to such qualified written requests from

Mr. Bonadio as required by RESPA.

80.    As a result of Defendant's failure to comply with its obligations under Section 2605, Mr. Bonadio suffered actual damages. Further, Defendant had a pattern or practice of noncompliance with the requirements of Section 2605.

81.    Thereby, Defendant violated the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 *et seq*.

Count VII

(Fraud)

82.    Mr. Bonadio incorporates the contents of the paragraphs hereinabove.

83.    Defendant conducted a fraudulent scheme to mislead Mr. Bonadio and destroy his credit in order to usurp his home. It wilfully and knowingly made, or caused to be made, affirmative misrepresentations of material facts in furtherance of this scheme. It also wilfully and knowingly concealed material facts from Mr. Bonadio, and failed to give Mr. Bonadio information which it was duty bound to give him. Defendant knew the falsity of the misrepresentations at the time these misrepresentations were made. Defendant also knew the material nature of the facts that it willfully concealed from Mr. Bonadio, and that Defendant ought to have disclosed these facts at that time to him.  Defendant had superior knowledge not available to Mr. Bonadio; as such, it had the duty to disclose the facts. Mr. Bonadio relied upon Defendant's representations, and was unaware of the falsity or misleading nature of the representations. Mr. Bonadio's reliance was reasonable under the circumstances. As a result of such reliance, Mr. Bonadio sustained damages.

84.    By engaging in the conduct described above, Defendant committed a fraud upon

Mr. Bonadio.

85.   Moreover, Defendant's wanton conduct was systematic, in reckless disregard of
its statutory and other duties, tantamount to criminal indifference to civil
obligations, and unconscionable.

86.   Defendant is therefore liable to pay Mr. Bonadio compensatory and punitive
damages in such amount as may be proven at trial, together with attorneys' fees
and expenses and such other amounts as may be appropriate. In addition, Mr.
Bonadio is also entitled to the equitable, and injunctive and declaratory reliefs.

COUNT VIII

(Negligent Misrepresentation)

87.   Mr. Bonadio incorporates the contents of the paragraphs hereinabove.

88.   Defendant made or caused to be made, affirmative misrepresentations of material
facts in furtherance of this scheme. It also concealed material facts from Mr.
Bonadio and failed to give him a copy of the transaction documents. Defendant
ought to have known the falsity of the misrepresentations, and/or the materiality
of the concealed facts. Defendant had superior knowledge not available to Mr.
Bonadio; as such, it had the duty to disclose the facts. Further, the parties had a
special relationship which gave rise to a duty on the part of Defendant to use
reasonable care to impart correct information to Mr. Bonadio. Mr. Bonadio relied
upon Defendant's representations, and was unaware of the falsity or misleading
nature of the representations. Mr. Bonadio's reliance was reasonable under the
circumstances. As a result of such reliance, Mr. Bonadio sustained damages.

89.   By engaging in the conduct described above, Defendant committed the tort of
negligent misrepresentation upon Mr. Bonadio.

90.  Defendant is therefore liable to pay Mr. Bonadio damages in such amount as maybe proven at trial, together with attorneys' fees and expenses and such other amounts as may be appropriate. In addition, Mr. Bonadio is also entitled to the equitable, and injunctive and declaratory reliefs.

## COUNT IX

### (Breach of Contract)

91.  Mr. Bonadio incorporates the contents of the paragraphs hereinabove.

92.  Defendant misled Mr. Bonadio into defaulting on his mortgage.

93.  Thereafter, Defendant failed and refused to consider in good faith Mr. Bonadio's application for a loan modification, and wrongfully denied it.

94.  Further, Defendant charged sums towards fees and expenses which were considerably in excess of those promised to Mr. Bonadio, and imposed significant undisclosed amounts towards alleged fees and other charges.

95.  Thereby, Defendant breached their contract with Mr. Bonadio. As a result of such breach, Mr. Bonadio sustained damages.

96.  Defendant is therefore liable to pay Mr. Bonadio compensatory damages in such amount as may be proven at trial, together with attorneys' fees and expenses and such other amounts as may be appropriate. In addition, Mr. Bonadio is also entitled to the equitable remedies, and injunctive and declaratory reliefs.

## COUNT X

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

97.  Mr. Bonadio incorporates the contents of the paragraphs hereinabove.

98.  By its conduct aforesaid, Defendant breached the implied covenant of good faith and fair dealing. As a result of such breach, Mr. Bonadio sustained damages.

99.     Defendant is therefore liable to pay Mr. Bonadio compensatory damages in such amount as may be proven at trial, together with attorneys' fees and expenses and such other amounts as may be appropriate. In addition, Mr. Bonadio is also entitled to the equitable remedies of rescission, and injunctive and declaratory reliefs.

WHEREFORE, Mr. Bonadio respectfully requests that this Court:

a.      Award compensatory, treble, punitive, and/or statutory damages, in such amount not less than $10 million, including costs and reasonable attorney's fees to Mr. Bonadio against Defendant; and

b.      Award such other relief as the Court deems appropriate.

Dated:          April 25, 2012              **Chittur & Associates, P.C.**

_____

By: Krishnan Chittur (kc9258)
286 Madison Avenue Suite 1100
New York, New York  10165
(212) 370-0447

**Attorneys for Plaintiff**