# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

JOSEPH BONADIO,

        Plaintiff,

  v.

PHH MORTGAGE CORPORATION,

        Defendant.

Civil Action No.  12-cv-3421 (VLB)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
500 Fifth Avenue, 49th Floor
New York, New York 10110
(212) 302-6574

Attorneys for PHH Mortgage Corporation

## TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS ............................................................... i

PRELIMINARY STATEMENT ..................................................... 1

FACTS ............................................................................. 1

LEGAL ARGUMENT

APPLICABLE STANDARD ...................................................... 1

POINT I

COUNT I – RICO, 18 U.S.C. § 1962(c)....................................... 5

    A.    The Complaint Fails To Properly Allege An "Enterprise"    5

    B.    The Complaint Fails to Properly Allege a "Pattern of Racketeering Activity"....................................... .....    7

POINT II

COUNT II – RICO, 18 U.S.C. § 1962(d)....................................... 9

POINT III

COUNT V – EQUAL CREDIT OPPORTUNITY ACT, 15 U.S.C. § 1691    10

POINT IV

COUNT VI – REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. § 2601 ...............................................................    11

    A.    Plaintiff Fails To Adequately Plead That His Letters Constituted "QWRs" ............................................    12

    B.    Plaintiff Fails To Adequately Plead "Actual Damages"    13

POINT V

COUNTS III & IV – DECEPTIVE BUSINESS PRACTICES UNDER
GBL § 349 ……………………………………………………………    14

POINT VI

COUNT VI – FRAUD ……………………………………………    16

POINT VII

COUNT VIII – NEGLIGENT MISREPRESENTATION ……………    19

POINT VIII

COUNT IX – BREACH OF CONTRACT ………………………    21

POINT IX

COUNT X – BREACH OF IMPLIED COVENANT OF GOOD FAITH    22


CONCLUSION……………………………………………………………    24

## PRELIMINARY STATEMENT

Defendant, PHH Mortgage Corporation ("PHH"), respectfully submits this Memorandum of Law in support of its motion to dismiss the Complaint filed by plaintiff, Joseph Bonadio ("Plaintiff"), for failure to state claims upon which relief may be granted and for otherwise failing to adequately plead the various causes of action. As set forth below, we respectfully submit that all of Plaintiff's causes of action should be dismissed.

## FACTS

Because this motion is before the Court pursuant to Federal Rule 12(b)(6), the facts of this matter are as alleged in Plaintiff's Complaint, which is attached to the Declaration of Jonathan P. Vuotto, Esq. ("Vuotto Decl.") as **Exhibit A** (hereinafter, "Complaint"). In addition, PHH requests that the Court consider two documents that are the basis for and are integral to Plaintiff's Complaint: (i) that certain Fixed/Adjustable Rate Note given by Plaintiff to Merrill Lynch Credit Corporation ("MLCC") that evidences the loan from MLCC to Plaintiff (attached to the Vuotto Decl. as **Exhibit B** (hereinafter, the "Note")); and (ii) that certain Mortgage on real property known as 410 Rich Avenue, Mount Vernon, New York 10552 given by Plaintiff to MLCC (attached to the Vuotto Decl. as **Exhibit C** (hereinafter, the "Mortgage")). PHH reserves all of its rights with respect to the allegations in the Complaint.

## LEGAL ARGUMENT

## APPLICABLE STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent

with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," rather plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

Following the Supreme Court's decision in *Iqbal*, courts use a two-prong approach on a motion to dismiss. *See, e.g., Weston v. Optima Commc'ns Sys., Inc.*, No. 09-3732, 2009 WL 3200653, at *2 (S.D.N.Y. Oct. 7, 2009) (Chin, J.) (acknowledging a "two-pronged" approach to deciding motions to dismiss); *S. ILL. Laborers' and Employers Health and Welfare Fund v. Pfizer, Inc.*, No. 08- 5175, 2009 WL 3151807, at *3 (S.D.N.Y. Sept. 30, 2009) (same); *Inst. for Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*, No. 08-6195, 2009 WL 2850230, at *3 (S.D.N.Y. Aug. 28, 2009) (same). First, the court must accept all factual allegations in the complaint as true, discounting legal conclusions that are presented as facts. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true") (citing *Iqbal*, 556 U.S. at 678-79); *Spool v. World Child Int'l Adoption Agenc*y, 520 F.3d 178, 183 (2d Cir. 2008) ("Although we construe the pleadings liberally, bald assertions and conclusions of law will not suffice.") (internal quotation marks omitted). Second, the court must determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Plausibility determinations are a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). Meeting the

plausibility standard requires a complaint to plead facts that show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). A complaint that only pleads facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal quotation marks omitted)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool*, 520 F.3d at 183 (citation omitted).

Courts deciding motions to dismiss must draw all reasonable inferences in favor of the nonmoving party and must limit their review to facts and allegations contained in: (1) the complaint; (2) documents either incorporated into the complaint by reference or attached as exhibits; and (3) matters of which the court may take judicial notice. *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (citation omitted). Courts also consider documents not attached to the complaint or incorporated by reference, but "upon which the complaint solely relies and which [are] integral to the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (internal quotation marks omitted) (quoting *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *see also Grubin v. Rattet (In re Food Mgmt. Grp.)*, 380 B.R. 677, 690 (Bankr. S.D.N.Y. 2008) ("A court may even consider a document that has not been incorporated by reference where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal quotation marks omitted) (quoting *Buena Vista Home Entm't, Inc. v.*

3

*Wachovia Bank, N.A. (In re Musicland Holding Corp.),* 374 B.R. 113, 119 (Bankr. S.D.N.Y. 2007), *aff'd,* 386 B.R. 428 (S.D.N.Y. 2008), *aff'd,* 318 Fed. Appx. 36 (2d Cir. 2009)).

When fraud is pleaded, Federal Rule 9(b) requires the plaintiff to plead with particularity. *See Atlanta Shipping Corp., Inc. v. Chem. Bank,* 818 F.2d 240, 251 (2d Cir. 1987). Pursuant to Rule 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b). The Second Circuit has stated that the complaint must: "(1) detail the statements (or omissions) that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) were fraudulent." *Harsco Corp. v. Segui,* 91 F.3d 337, 347 (2d Cir. 1996) (citations omitted).

Although the second part of Rule 9(b) permits scienter to be pleaded generally, the pleader must "allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994) (citation omitted). Plaintiffs may not allege "fraud by hindsight." *See Shields,* 25 F.3d at 1129 (quoting *Denny v. Barber,* 576 F.2d 465, 470 (2d Cir. 1978)). A strong inference of fraudulent intent "may be established either (a) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 1128; *see ATSI Commns., Inc. v. The Shaar Fund, Ltd.,* 973 F.3d 87, 99 (2d Cir. 2007). The purpose of Rule 9(b) is to further three goals: "(1) providing a defendant fair notice of plaintiff's claim, to enable preparation of defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike suits." *DiVittorio v. Equidyne Extractive Indus. Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987) (citation omitted).

## POINT I

### COUNT I – RICO, 18 U.S.C. § 1962(c)

"To establish a claim for civil violation of section 1962(c), 'a plaintiff must show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999) (*quoting Azrielli v. Cohen Law Offices*, 21 F.3d 512, 520 (2d Cir. 1994)). A RICO claim is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Plount v. American Home Assurance Co.*, 668 F. Supp. 204, 206-07 (S.D.N.Y. 1987) ("[A]ll of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions"). Courts should dismiss RICO claims where a plaintiff "artificially fragment[s] a singular act into multiple acts simply to invoke RICO" and seeks to "transform[] garden-variety common law actions into federal cases." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997); *see Gross v. Waywell*, 628 F. Supp.2d. 475, 593 (S.D.N.Y. 2009); *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 167 (2d Cir. 2004).

### A.    The Complaint Fails To Properly Allege An "Enterprise"

Under RICO, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. 1961(4). "To establish an association-in-fact enterprise, plaintiffs must demonstrate 'three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Continental Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11-7801, 2012 WL 1231775, at *5 (S.D.N.Y. Apr. 12, 2012) (*quoting Boyle v. United States*, 556

5

U.S. 938 (2009)).  Thus, a "conclusory naming of a string of entities" will not suffice.  *See Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp.2d 514, 539 (S.D.N.Y. 2001).

Here, the Complaint falls well short of properly alleging an "enterprise."  Seemingly, merely "tracking" the language of the statute, Plaintiff cursorily alleges that PHH and a group of unnamed defendants, including mortgage brokers and lenders, acted in concert as an enterprise within the meaning of RICO.  *See* Complaint at ¶¶ 32-34.  Absent are the requisite allegations of "how long the association lasted...who did what when, and...how the acts are related to the common purpose of the enterprise."  *Plount*, 668 F. Supp. at 206 (dismissing RICO claim on motion to dismiss for failure to adequately plead "enterprise" element); *Eaves v. Designs For Finance, Inc.*, 785 F. Supp.2d 229, 263 (S.D.N.Y. 2011) (granting motion to dismiss RICO claim where plaintiff failed to plead facts "suggesting that the constituent members of the alleged enterprise functioned as a unit"); *Nasik*, 165 F. Supp.2d at 539 (dismissing RICO claim where Plaintiff merely alleged that defendants were "combined in an association-in-fact" without specific facts alleged).

Nor are there any allegations the "hierarchy, organization, and activities" of the alleged enterprise, or as to how each of the associates of the alleged enterprise interacted as a unit in furtherance of the enterprise's purpose or scheme.  *See First Capital*, 385 F.3d at 174-75; *101 McMurray, LLC v. Porter*, No. 10-9037, 2012 WL 997001, at *7 (S.D.N.Y. Mar. 26, 2012) (dismissing RICO claim for failure to allege "enterprise" element where only allegations of "enterprise" were "mere legal conclusions without factual support to demonstrate the existence of an 'ongoing organization'"); *Continental Petroleum Corp.*, 2012 WL 1231775, at *6 (dismissing RICO claim where plaintiffs "fail to make any concrete factual assertions as to the mechanics of the interactions among defendants, including facts indicating that the disparate

defendants functioned as a unit, or supporting the inference that defendants had a common interest in the success of the so-called enterprise."); *Gross*, 628 F. Supp. 2d at 498 (dismissing RICO claim where allegations of acts by enterprise's members were done in furtherance of defendants', not enterprise's, own affairs).   Without these allegations, Plaintiff's RICO claim fails and must be dismissed.

### B.       The Complaint Fails to Properly Allege a "Pattern of Racketeering Activity"

Plaintiff's RICO claim also does not adequately plead the requisite "pattern of racketeering activity."   "To establish 'pattern,' a plaintiff must allege facts tending to show that 'the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'"   *Weizmann Institute of Science v. Neschis*, 229 F. Supp.2d. 234, 256 (S.D.N.Y. 2002) (*quoting H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)); *Schlaifer*, 119 F.3d at 97.   The relatedness test requires that the predicate acts relied upon "share the same or similar purposes, results, participants, victims or methods, or otherwise are interrelated by distinguishing characteristics and are not isolated events."   *H.J. Inc.*, 429 U.S. at 240.   The continuity element is satisfied by showing either "close-ended continuity," which may be shown "by a series of related predicate acts which occurred over a substantial period of time," or "open-ended continuity, "which "requires a showing of existence of a threat of continuing criminal activity beyond the period during which the predicate acts were performed."   *Gross*, 628 F. Supp.2d at 485 (citing *Cofacredit*, 187 F.3d at 243).

Plaintiff's haphazard allegations concerning a "pattern of racketeering activity" are deficient.   Plaintiff provides only a prolix list of dates of phone calls and mailings self-servingly entitled "racketeering activity" without alleging any facts that show each phone call or mailing was either an act of mail fraud (18 U.S.C. § 1341) or wire fraud (18 U.S.C. § 1343).   *See*

Complaint at ¶¶ 35-38.  Plaintiff fails to specify the content, date and place of each the alleged misrepresentations as to each of these communications between the borrower and loan servicer that is required to properly plead predicate write and mail fraud acts under RICO.  *See, e.g.*, *Knoll v. Schectman*, 275 Fed. Appx. 50, 51 (2d Cir. 2008) (dismissing RICO claim where allegations of mail and wire fraud did not "state the contents of the communications, who was involved, where and when they took place, and explain[ed] why they were fraudulent"); *Anatian v. Coutts Bank Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999) (finding that mail and wire fraud predicate acts must be pled with sufficient specificity to show how each statement was fraudulent); *101 McMurray*, 2012 WL 997001, at *8 (noting that wire fraud allegations without requisite detail of "content, date, and place…and identity of the persons making them" did not satisfy requirement under RICO to adequately plead predicate acts); *Asbeka Industries v. Travelers Indemnification Co.*, 831 F. Supp. 74, 89 (E.D.N.Y. 1993) ("The cases are legion that a RICO complaint cannot be predicated on innocuous business communications, absent some factual basis for inferring the sender's intent to defraud the recipient via a scheme to defraud.").  The failure to provide this detail and, instead, to simply label a phone call a "wire fraud" and a mailing a "mail fraud " is fatal to Plaintiff's RICO claim.

Further, merely alleging predicate acts, without more, does not satisfy the "pattern of racketeering activity" requirement. *See Gross*, 628 F. Supp.2d at 485. The Second Circuit has consistently held "that allegations of RICO violations involving solely mail and wire fraud or little other variety in the predicate acts, a limited number of participants or victims, a discrete scheme with a narrow purpose or a single property-as opposed to complex, multi-faceted schemes-are generally insufficient to demonstrate close-ended continuity, and thus to satisfy the 'pattern' element of a plausible RICO claim." *Gross*, 628 F. Supp.2d at 494 (citation omitted);

*see GICC Capital Corp. v. Technology Financial Group, Inc.*, 67 F.3d 463, 468-69 (2d Cir. 1995). Stripped down, Plaintiff's theory is that PHH, apparently along with other unnamed defendants, set out through a series of fraudulent mailings and phone calls, to take his home. At best, Plaintiff has alleged a commercial dispute between a borrower and loan servicer and clearly not the type of organized criminal enterprise Congress expressly contemplated when enacting RICO. *See Schlaifer*, 119 F.3d at 97; *Gross*, 628 F. Supp.2d. at 593. There are only cursory allegations that this alleged fraud extended to other homeowners, without any of the detail required under 9(b) to demonstrate the requisite pattern of racketeering activity. For this reason, as well as those stated above, the Court should dismiss Plaintiff's RICO claim.

## POINT II

## COUNT II – RICO, 18 U.S.C. § 1962(d)

A claim for conspiracy under 18 U.S.C. § 1962(d) cannot survive without an underlying, properly pled RICO claim. *See Gross*, 628 F. Supp.2d at 500 (citing *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128 (1998)); *Farberware, Inc. v. Groben*, 764 F. Supp. 296, 307 (S.D.N.Y. 1991). With Plaintiff's substantive RICO claim failing for the reasons stated above, Plaintiff's RICO conspiracy claim must fail as well. Furthermore, the 1962(d) claim is also deficient because Plaintiff has failed to allege particular facts sufficient to establish that PHH, along with the unnamed defendants, entered into an agreement to engage in conduct that violated the RICO statute. *See Satinwood*, 385 F.3d at 182; *Continental Petroleum Corp.*, 2012 WL 1231775, at *8.

## POINT III

## COUNT V – EQUAL CREDIT OPPORTUNITY ACT, 15 U.S.C. § 1691

The Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("ECOA") provides that in certain circumstances a lender must furnish "each applicant against whom adverse action is taken…a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2).  The statute defines "adverse action" as a "denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested."  Critically, ECOA omits from the definition of "adverse action" "a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit" and "[a]ny action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account."  *See* 15 U.S.C. § 1691(d)(6); 12 C.F.R. § 202.2(c)(2)(ii); *see also Eichholz v. Wells Fargo Bank, N.A.*, No. 10-13622, 2011 WL 5375375, at *9 (E.D. Mich. Nov. 7, 2011) ("While the ECOA defines adverse action as including the denial of a credit modification, the same provision specifically exempts denial of a credit modification when the refusal occurs 'under an existing credit arrangement where the applicant is delinquent or otherwise in default.") (internal citation omitted).

Construed liberally, Plaintiff alleges that PHH failed to provide the required notice of "adverse action" after denying his application for a loan modification. *See* Complaint at ¶¶ 71-75.  However, Plaintiff concedes that he was in default *before* applying for a loan modification. *See id.* at ¶¶ 13-15.  Thus, based on Plaintiff's own allegations, PHH was not required under ECOA to provide Plaintiff with a statement of reasons for denying Plaintiff's loan modification agreement. *See, e.g., Casey v. Litton Loan Servicing LP*, No. 11-0787, 2012 WL 502886, at *6

(D. Md. Feb. 14, 2012) ("Plaintiffs' ECOA claim fails under the statute, because the Caseys were already in default when they requested a loan modification"); *Ortega v. Wells Fargo Bank, N.A.*, No. 11-01734, 2012 WL 275055, at *5 (N.D. Oh. Jan. 31, 2012) (dismissing ECOA claim for failure to provide statement of reasons for adverse credit action where plaintiff "voluntarily incurred a default"); *Mashburn v. Wells Fargo Bank, N.A.*, No. 11-0179, 2011 WL 2940363, at *6 (W.D. Wash. Jul. 19, 2011) (dismissing ECOA claim where plaintiff was in default when he made application); *Marley v. Bank of America*, No. 10-10885, 2012 WL 847374, at *1 (D. Mass. Mar. 13, 2012) (dismissing ECOA claim where plaintiff was in default); *see also Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 592 F. Supp.2d 283, 291 n. 6 (N.D.N.Y. 2008) (noting that plaintiff would not qualify for protection under ECOA due to plaintiff's default on loan agreement). Accordingly, Plaintiff's ECOA claim must be dismissed.

## POINT IV

## COUNT VI – REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. § 2601

As discussed above, to survive a motion to dismiss, Plaintiff's complaint must be supported by factual allegations. *See Iqbal*, 556 U.S. at 678-679. Accordingly, "neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth." *Falcocchia v. Saxon Mortg., Inc.*, 709 F. Supp.2d 873, 876 (E.D. Cal. 2010) (quoting *Iqbal*, 556 U.S. at 678-79). A complaint "must state more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." *In re Griffin*, No. 10-22431, 2010 WL 3928610, at *2 (Bankr. S.D.N.Y. Aug. 31, 2010) (citing *Twombly*, 550 U.S. at 555).

Here, Plaintiff's RESPA claim merely recites the elements of the claim without supplying any factual support.  Thus, the claim fails because, among other things, Plaintiff inadequately pleads the necessary elements of "qualified written request" and "actual damages."

## A.     Plaintiff Fails To Adequately Plead That His Letters Constituted "QWRs"

To make out a viable claim under RESPA § 2605(e), a plaintiff must allege that he submitted a "qualified written request" ("QWR") to a defendant and that the defendant failed to answer the request within the sixty (60) days proscribed by the statute.   12 U.S.C. § 2605(e)(1)(A) & § 2605(e)(2). Even assuming *arguendo* that there is truth to Plaintiff's allegations that he sent PHH requests and PHH failed to respond, Plaintiff fails to adequately plead that the letters he allegedly sent to PHH were QWRs under the statute.  RESPA defines a "qualified written request" as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Here, Plaintiff makes a purely conclusory allegation that the letters he allegedly sent to PHH constituted QWRs.  Plaintiff does not include copies of the letters with his pleading, nor does he make any allegations regarding their content other than the fact that they allegedly "demanded information" about vague topics relating to the loan and its servicing. These allegations lack the requisite detail to form the basis of a QWR under RESPA.  *See Falcocchia*, 709 F. Supp.2d at 883 (dismissing plaintiffs' RESPA claim where "plaintiffs make no other allegations regarding the content of this purported QWR, nor have plaintiffs provided a copy of the letter"); *Manzano v. Metlife Bank N.A.*, No. 11-651, 2011 WL 2080249, at *7 (E.D.

Cal. May 25, 2011) ("While plaintiff is correct that she is not required to attach copies of the alleged QWRs to her complaint, she cannot simply allege in conclusory fashion that the written correspondence constituted QWRs . . . . [Such] conclusory allegations . . . are insufficient to state a claim for a violation of RESPA."). Here, if Plaintiff did not make a QWR, then PHH had no obligation to respond to it under the statute. Accordingly, Plaintiff's RESPA claim must be dismissed.

### B.   Plaintiff Fails To Adequately Plead "Actual Damages"

Notably, Plaintiff's claim under RESPA must nevertheless fail because he fails to plead actual damages. "To have a viable cause of action under RESPA . . . individuals must show not only the failure to comply with the provisions of Section 2605, but also *actual damages* to the borrower as a result of the failure, as set forth in 2605(f)(1)(A), as well as any additional damages that the court may allow in the case of a pattern or practice of noncompliance with the requirements of Section 2605, in an amount not to exceed 1,000 dollars." *In re Griffin*, 2010 WL 3928610 at *4. Accordingly, dismissal of a claim under 12 U.S.C. § 2605 is appropriate where the complaint "merely prays for relief without specifying the injury [plaintiff] suffered." *Gorham v. Bank of Am., N.A.*, No. 09-1150, 2010 WL 1704829, at *4 (N.D.N.Y. Apr. 28, 2010); *see Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, No. 08-019, 2009 WL 1748743, at *8 (N.D.N.Y. Jun. 19, 2009) (plaintiff failed to state a RESPA claim because she did not sufficiently allege actual damages but rather only that she "was damaged").

Here, Plaintiff merely recites the requirements of the statute without providing any actual factual basis to support his claims that he "suffered actual damages". Although in Paragraph 29 of the Complaint, Plaintiff alleges injuries that he supposedly suffered as a result of "fraudulent conduct" on the part of PHH, such injuries are clearly related to Plaintiff's various claims of

fraud and, accordingly, are insufficient to form the basis of a RESPA claim for actual damages. Nor does simply having to file suit suffice as a harm warranting damage. *Sullivan v. JP Morgan Chase Bank, NA*, 725 F. Supp. 2d 1087, 1095 (E.D. Cal. 2010) ("The loss alleged must be related to the RESPA violation itself . . . . Allegations made under a separate cause of action are insufficient to sustain a RESPA claim for actual damages. . . . Nor does simply having to file suit suffice as harm warranting actual damages."). Accordingly, Plaintiff's RESPA claim must be dismissed for this reason also.

## POINT V[1]

## COUNTS III & IV – DECEPTIVE BUSINESS PRACTICES UNDER GBL § 349

The New York General Business Law ("GBL") provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." GBL § 349(a) (McKinney 2004). To maintain a cause of action under GBL § 349, a plaintiff must show that: (1) the defendant's conduct is "consumer-oriented"; (2) the defendant is engaged in a "deceptive act or practice"; and (3) the plaintiff was injured by this practice. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25-26, 623 N.Y.S.2d 529 (1995); *see Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000); *Lum v. New Century Mortg. Corp.*, 19 A.D.3d 558, 559-60 (2d Dep't 2005).

---

[1] Plaintiff alleges that supplementary jurisdiction exists over his state-law claims under 28 U.S.C. § 1367. Complaint, ¶ 4. However, if the Court dismisses Plaintiff's RICO, ECOA and RESPA claims, it need not and should not reach Plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003). This is particularly so where the case is in an early stage and no preemption issues are implicated. *See Valencia*, 316 F.3d at 306; *E.D. v. Tuffarelli*, 692 F. Supp. 2d 347, 368-69 (S.D.N.Y. 2010); *Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 462-63 (S.D.N.Y. 2004). Indeed, the Second Circuit has held that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia*, 316 F.3d at 306.

The "'consumer-oriented' requirement may be satisfied by showing that the conduct at issue 'potentially affect[s] similarly situated consumers.'" *Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 64-65 (2d Cir. 2010) (quoting *Oswego Laborers'*, 623 N.Y.S.2d at 533). A plaintiff bringing a claim under GBL § 349 "must 'demonstrate that the acts or practices have a broader impact on consumers at large.'" *Id.* (quoting *Oswego Laborers'*, 623 N.Y.S.2d at 532); *see Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp.2d 464, 479 (S.D.N.Y. 2010) (GBL § 349 claim dismissed because plaintiff produced no evidence of misrepresentations impacting consumers at large). Accordingly, New York courts have recognized that "'[p]rivate contract disputes' between the parties do not 'fall within the ambit of the statute.'" *Id.* (quoting *Oswego Laborers'*, 623 N.Y.S.2d at 532); *see, e.g., McCarthy v. Wachovia Bank, N.A.*, 759 F. Supp. 2d 265, 280-81 (E.D.N.Y. 2011); *Kraft*, 715 F. Supp. 2d at 479; *Gorham-DiMaggio*, 592 F. Supp. 2d at 296-97.

Here, Plaintiff's Complaint alleges only facts concerning PHH's purportedly deceptive conduct in dealing with Plaintiff and in considering Plaintiff's request for a loan modification. *See* Complaint, ¶ 60. Such purported acts were not "consumer oriented," but rather were directed at Plaintiff and therefore Plaintiff's GBL claims should be dismissed. *See Wilson*, 625 F.3d at 64-65; *Oswego Laborers'*, 85 N.Y.2d at 25-26. Plaintiff's only allegations of actions "directed at the general public" are conclusory statements that are unsupported by any specifically-pleaded fact. *See* Complaint, ¶¶ 63, 67. Indeed, with respect to his claim for an injunction under GBL § 349(h), Plaintiff merely extrapolates the allegations of PHH's dealings with him to general "consumers," without any specificity. *See* Complaint, ¶ 67.

Furthermore, claims under GBL § 349 must be pled in accordance with the heightened pleading standard of Federal Rule 9(b). *See, e.g., Rey-Willis v. Citibank, N.A.*, No. 3-2006, 2003 U.S. Dist. LEXIS 12760, at *22 (S.D.N.Y. Jul. 22, 2003). Plaintiff failed to support his GBL §

349(h) claim with any specificity, and failed to allege any facts suggesting that PHH's alleged actions were "consumer oriented."

Finally, Plaintiff fails to adequately plead actual damages, which is necessary to state a claim under GBL § 349. *Smith v. Chase Manhattan Bank, USA, N.A.*, 293 A.D.2d 598, 599 (2d Dep't 2002); *see Stutman*, 95 N.Y.2d at 29; *Oswego Laborers'*, 85 N.Y.2d at 25-26.   Even accepting as true all of the facts alleged in Paragraphs 5 though 28 of Plaintiff's Complaint, there is nothing contained therein that would suggest that PHH is liable for any intentionally deceptive conduct, and there are no supporting facts for Plaintiff's bald assertions of purported damages – that his "credit has been ruined, his equity in his own home substantially diluted if not destroyed, and he has been subject to mental anguish." Complaint, ¶ 29.  Plaintiff does not explain how his credit has been ruined by PHH or how he has purportedly incurred monetary damages as a result. Plaintiff also does not explain how the equity in his home has allegedly been diluted or destroyed as a result of any of the facts alleged in Paragraphs 5 through 28 of the Complaint.  For example, Plaintiff does not explain how he incurred monetary damages as a result of PHH allegedly failing to inform him of the identity of the owner of the subject Note. *See* Complaint, ¶¶ 8-9; 27-28.  In short, Plaintiff has failed to plead actual damages and therefore his GBL § 349 claims are inadequate. *See Smith*, 293 A.D.2d at 599.

For these reasons, Plaintiff's GBL § 349 claims should be dismissed.

## POINT VI

## COUNT VI – FRAUD

In order to establish a prima facie claim of fraud under New York law, a plaintiff must show the existence of "'a material, false representation, and intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff.'" *Turtur v. Rothschild*

16

*Registry Int'l Inc.*, 26 F.3d 304, 310 (2d Cir. 1994) (quoting *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970-71 (2d Cir. 1987)); *Gorham-DiMaggio*, 592 F. Supp.2d at 297; *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 57 (1999) (citing *Vermeer Owners Inc., v. Guterman*, 78 N.Y.2d 1114, 1116 (1991)) ("[t]he essential elements of a fraud claim under New York law include '(1) representation of material fact, (2) falsity, (3) scienter, (4) reliance and (5) injury.'").

Federal Rule 9(b) requires the plaintiff to plead fraud with particularity. *Atlanta Shipping Corp.*, 818 F.2d at 251. Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Second Circuit has stated that the complaint must: "(1) detail the statements (or omissions) that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) were fraudulent." *Harsco Corp.*, 91 F.3d at 347.

Plaintiff has failed to plead facts sufficient to demonstrate a plausible claim of fraud against PHH. First, Plaintiff's claim fails because he has not demonstrated reasonable reliance on any of the alleged fraudulent misrepresentations set forth in the Complaint. Plaintiff was obligated to perform under the terms of the Note, which specifies that payment is due on the first day of each month in accordance with the terms set forth in Sections 3 and 4 of the Note. *See* Note, at Sections 3-4. The Note provides that the lender would notify Plaintiff by mail of any changes in the amount of the monthly payment and would also provide Plaintiff with the title and phone number of a person who would answer questions about such notice. *See* Note, Section 4(F). The Note further provides that, even if, at a time when Plaintiff is in default, the lender

does not require Plaintiff to immediately pay in full, the lender will still have the right to do so if Plaintiff is in default at a later time. *See* Note, Section 7(D).

Thus, without written notification relieving him of his payment obligation, Plaintiff cannot establish that he was reasonable in relying on a purported representation of a customer service representative that Plaintiff "had to default on his mortgage monthly payments" to qualify for a loan modification, which would have contradicted the clear terms of the Note. *See* Complaint, ¶ 11.  As found in *Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 592 F. Supp.2d 283 (N.D.N.Y. 2008), "[c]onsidering that the interest at stake was Plaintiff's home, it is not reasonable to forgo payment due based on oral assertions of a payment amount contradicting the written bill without requiring adequate written assurances, as required by the Mortgage Note. It was also not reasonable to rely on oral assertions made by salespersons at unidentified times without at least procuring the names and titles of the individuals providing the assurances, as Plaintiff here failed to do." *Gorham-DiMaggio*, 592 F. Supp.2d at 297.

Also, Plaintiff has failed to establish that PHH intended to defraud him, making only a conclusory allegation that PHH "conducted a fraudulent scheme to mislead Mr. Bonadio and destroy his credit in order to usurp his home." Complaint, ¶ 83.  There is no connection between the factual allegations in the Complaint and Plaintiff's conclusion that, by PHH's purported actions, it intended to defraud Plaintiff and "usurp his home."

Moreover, Plaintiff's allegations of fraud do not comply with Federal Rule 9(b)'s pleading requirements.   Specifically, the Complaint does not "(1) detail the statements (or omissions) that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or

omissions) were fraudulent." *Harsco Corp.*, 91 F.3d at 347.  Accordingly, Plaintiff's fraud claim

should be dismissed.

## POINT VII

## COUNT VIII – NEGLIGENT MISREPRESENTATION

To plead a claim for negligent misrepresentation under New York law, a plaintiff must

allege: (1) the existence of a special or privity-like relationship imposing a duty on the defendant

to impart correct information to the plaintiff; (2) that the information was incorrect; and (3)

reasonable reliance on the information. *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148

(2007); *RBS Citizens, N.A. v. Thorsen*, 71 A.D.3d 1108, 1109 (2d Dep't 2010); *see Hydro*

*Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20-21 (2d Cir. 2000); *King v. Crossland*

*Savs. Bank*, 111 F.3d 251, 257-58 (2d Cir. 1997) (citing *Eiseman v. State of New York*, 70

N.Y.2d 175, 187 (1987)).  Importantly, the "special relationship" of trust and confidence must

have existed prior to the contractual relationship giving rise to the alleged wrong, and not as a

result of it.  *See Emigrant Bank v. UBS Real Estate Securities, Inc.*, 49 A.D.3d 382, 385 (1st

Dep't 2008); *Elghanian v. Harvey*, 249 A.D.2d 206 (1st Dep't 1998); *50-01 Realty LLC v*

*Brooklyn Fed. Sav. Bank*, 35 Misc.3d 1206A (Sup. Ct. 2012).  Moreover, New York courts have

repeatedly held that "an arm's length borrower-lender relationship is not of a confidential or

fiduciary nature and therefore does not support a cause of action for negligent

misrepresentation."  *River Glen Assocs., Ltd. v. Merrill Lynch Credit Corp.*, 295 A.D.2d 274,

275 (1st Dep't 2002); *see Genna v. Sallie Mae, Inc.*, No. 11-7371, 2012 U.S. Dist. LEXIS 54044,

at *14-15 (S.D.N.Y. Apr. 16, 2012); *Dobroshi v. Bank of Am., N.A.*, 65 A.D.3d 882, 884 (1st

Dep't 2009); *Auble v. Doyle*, 38 A.D.3d 1264, 1266 (4th Dep't 2007); *Korea First Bank of N.Y.*

*v. Noah Enters.*, 12 A.D.3d 321, 323 (1st Dep't 2004); *50-01 Realty*, 35 Misc.3d at 1206A.

Here, Plaintiff makes only the conclusory allegation that "the parties had a special relationship which gave rise to a duty on the part of Defendant to use reasonable care to impart correct information to Mr. Bonadio." Complaint, ¶ 88. Such bald allegation is clearly insufficient to make a plausible claim of a special relationship of trust and confidence between Plaintiff and PHH. Furthermore, it is undisputed that the only relationship between PHH and Plaintiff is a lender/borrower business relationship, which is clearly insufficient to sustain a negligent misrepresentation claim. Therefore, Plaintiff's claim should be dismissed. *See Genna v. Sallie Mae, Inc.*, 2012 U.S. Dist. LEXIS 54044 at \*14-15; *River Glen Assocs.*, 295 A.D.2d at 275; *Dobroshi*, 65 A.D.3d at 884.

Also, in assessing claims for negligent misrepresentation, courts in this district apply the heightened pleading standards of Rule 9(b). *See Burns v. Del. Charter Guar. & Trust Co.*, 805 F. Supp.2d 12, 28 (S.D.N.Y. 2011); *Ebusinessware, Inc. v. Technology Services Group Wealth Management Solutions, LLC*, 2009 U.S. Dist. LEXIS 122193, No. 08-9101, 2009 WL 5179535, at \*13 (S.D.N.Y. Dec. 29, 2009); *In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 495 (S.D.N.Y. 2006); *AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 254 F. Supp. 2d 373, 389 (S.D.N.Y. 2003). As set forth above, "[t]o satisfy the pleading requirements of Rule 9(b), a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Burns*, 805 F. Supp. 2d at 28 (citing *Wood v. Applied Research Assocs., Inc.*, 328 Fed. Appx. 744, 747 (2d Cir. 2009)).

Plaintiff fails to: (i) detail the statements that he contends were misrepresentations; (ii) identify the speaker; (iii) state where and when the alleged statements were made, and (iv) explain why the alleged statements were fraudulent. Therefore, Plaintiff's negligent

misrepresentation claim does not meet the heightened pleading requirement of Rule 9(b) and should be dismissed. *See Burns*, 805 F. Supp. 2d at 28; *Wood*, 328 Fed. Appx. at 747.

**POINT VIII**

**COUNT IX – BREACH OF CONTRACT**

Under New York law, "[t]o establish a prima facie case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004). "It is well settled that a contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself." *MHR Capital Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640, 912 N.E.2d 43, 47 (2009); *see JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009); *Fellows v. CitiMortgage, Inc.*, 710 F. Supp. 2d 385, 404 (S.D.N.Y. 2010). "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *MHR Capital Partners*, 912 N.E.2d at 47; *Fellows*, 710 F. Supp.2d at 404.

Here, Plaintiff appears to make two claims under his cause of action for breach of contract. First, Plaintiff alleges that PHH "failed and refused to consider in good faith Mr. Bonadio's application for a loan modification, and wrongfully denied it." Complaint, ¶ 93. To the extent that Plaintiff seeks damages for breach of a loan modification agreement, this claim is without merit as a matter of law. There "can be no breach of contract . . . without a governing valid contract." *Garrett v. Music Publishing Co. of Am., LLC*, 740 F. Supp. 2d 457, 462 (S.D.N.Y. 2010). As Plaintiff admits, the parties never consummated a loan modification agreement. Furthermore, Plaintiff is not given the right to a modification of the loan by either the Note or the Mortgage. *See generally* Note; Mortgage. Accordingly, any purported breach of

contract claim based on an inchoate loan modification agreement must be dismissed. *See Garrett*, 740 F. Supp. 2d at 462; *JP Morgan Chase Bank, N.A. v. Ilardo*, 940 N.Y.S.2d 829, 840 (Sup. Ct. 2012).

Plaintiff also alleges that PHH "charged sums towards fees and expenses which were considerably in excess of those promised to Mr. Bonadio, and imposed significant undisclosed amounts towards alleged fees and other charges." Complaint, ¶ 94. Initially, this allegation is completely unsubstantiated by any specific information about the purported fees, charges and expenses that PHH allegedly "imposed" on Plaintiff. Therefore, the claim is so ambiguous and "threadbare" that it cannot meet the plausibility requirement and should be dismissed. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557; *Spool*, 520 F.3d at 183.

Furthermore, Plaintiff admits that he has not made any payment towards the mortgage loan since he defaulted in January 2010. Therefore, to the extent that Plaintiff contends the alleged excessive "fees and expenses" were "imposed" after January 2010, Plaintiff has not and cannot show "damages resulting from the breach" because he has not paid those sums (or any other amounts) to PHH since that time. *See Nat'l Mkt. Share*, 392 F.3d at 525. Accordingly, Plaintiff's breach of contract claim should be dismissed.

## POINT IX

## COUNT X – BREACH OF IMPLIED COVENANT OF GOOD FAITH

New York law implies a covenant of good faith and fair dealing "pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006) (citation omitted). The covenant "can only impose an obligation consistent with other mutually agreed upon terms in the contract. It does not add to

the contract a substantive provision not included by the parties." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198-99 (2d Cir. 2005) (citation omitted).

However, New York law will not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when it arises from the same allegations as a breach of contract claim. *See Mendez v. Bank of Am. Home Loans Servicing, LP*, No. 11-1516, 2012 U.S. Dist. LEXIS 4595, at *32-35 (E.D.N.Y. Jan. 14, 2012) (dismissing breach of covenant claim both "because New York law does not recognize a duty of good faith in the formation of a contract" and as "identical to the breach of contract claim"); *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 334 (S.D.N.Y. 2010) ("A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of a covenant of an express provision of the underlying contract" (quoting *Harris v. Provident Life & Accident Ins., Co.*, 310 F.3d 73, 80 (2d Cir. 2002)); *Goldblatt v. Englander Communications, LLC*, No. 06-3208, 2007 WL 148699, at *5 (S.D.N.Y. Jan. 18, 2007) ("a claim for breach of the implied covenant of good faith can survive a motion to dismiss 'only if it is based on allegations different from those underlying the accompanying breach of contract claim.'"); *Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 70 A.D.3d 423, 894 N.Y.S.2d 47, 49-50 (1st Dep't 2010) (upholding dismissal of claim for breach of the implied covenant as "duplicative of the breach-of-contract claim" because "both claims arise from the same facts and seek the identical damages for each alleged breach"). "'In most circumstances, claims for breach of contract and the covenant of good faith and fair dealing are duplicative.'" *Mendez*, 2012 U.S. Dist. LEXIS 4595 at *30 (quoting *Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc.*, No. 05-8510, 2007 WL 438088, at *7 (S.D.N.Y. Feb. 8, 2007)).

Here, to the extent that Plaintiff properly states a claim for breach of contract, his cause of action for breach of the implied covenant of good faith and fair dealing is duplicative and should be dismissed. Indeed, Plaintiff appears to rely entirely on the facts alleged for his breach of contact claim to support his breach of implied covenant claim. *See* Complaint, ¶ 98. Moreover, Plaintiff's breach of implied covenant claim suffers from the same infirmities in pleading, and more, as his breach of contract claim. Plaintiff's allegations for this claim are completely conclusory and cannot meet the required plausibility standard, and therefore it should be dismissed. *See Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 557; *Spool*, 520 F.3d at 183.

## CONCLUSION

For all of the above reasons, PHH respectfully requests that Plaintiff's Complaint be dismissed in its entirety.

Respectfully submitted,

RIKER, DANZIG, SCHERER, HYLAND
& PERRETTI LLP
Attorneys for PHH Mortgage Corporation

Dated: June 20, 2012

By: _____
        Anthony J. Sylvester
        Jonathan P. Vuotto
