```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOSEPH BONADIO,                                               :
                         Plaintiff,                           :
                                                              :       MEMORANDUM DECISION
v.                                                            :
                                                              :       12 CV 3421 (VB)
PHH MORTGAGE CORPORATION,                                     :
                         Defendant.                           :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Joseph Bonadio brings this action against defendant PHH Mortgage Corporation, the mortgage servicer that denied his application to modify his mortgage loan, alleging violations of (i) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., (ii) the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 et seq., (iii) the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2061 et seq., (iv) New York General Business Law § 349, and (v) New York common law.[1]

Before the Court is defendant's motion to dismiss the amended complaint pursuant to Rule 12(b)(6). (Doc. #20). For the following reasons, the motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

In deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor.[2]

---

[1] Plaintiff's common law claims include fraud, negligent misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing. Plaintiff also seeks a declaration that defendant has acted in bad faith and, thus, may not foreclose on plaintiff's home.

[2] The Court has not considered the factual allegations in plaintiff's affidavit submitted in opposition to the motion. (Doc. #25). Wachtel v. Nat'l R.R. Passenger Corp., 2012 WL 292352, at *2 (S.D.N.Y. Jan. 30, 2012). In any event, plaintiff's affidavit largely rehashes the allegations in the amended complaint.

In 2006, plaintiff obtained from Merrill Lynch Credit Corporation ("Merrill Lynch") a mortgage loan (the "Mortgage") for his home in Mount Vernon, New York.  The Mortgage's payment terms are set forth in a Fixed/Adjustable Rate Note (the "Note").[3]  Under the Note, plaintiff agreed to make payments on the first day of each month.  The Note also provided that plaintiff would be in default if he did not pay the full amount of each monthly payment on its due date.

The Mortgage, in turn, stated that Merrill Lynch "may allow [plaintiff] . . . to delay or change the amount of" his monthly payments.  (Def.'s Decl. in Supp. of Mot. to Dismiss ("Def.'s Decl."), Ex. C, at 11).  But plaintiff would "still be fully obligated under the Note . . . unless [Merrill Lynch] agrees to release [him], in writing, from [his] obligations."  (Id.).

Defendant was the servicer for plaintiff's mortgage and, at all relevant times, received plaintiff's monthly mortgage payments.

In January 2010, plaintiff was having financial trouble.  On January 31, 2010, he called defendant's toll-free number to inquire about modifying his mortgage loan.  The representative who spoke to plaintiff asked whether he was current on his mortgage payments.  Plaintiff said he was.  Plaintiff alleges the representative then said, to qualify for loan modification, plaintiff needed to default on his mortgage payments "for a few months and then apply for modification." (Am. Compl. ¶ 13).  Plaintiff alleges this statement was false and intended to mislead him.

Following this conversation, plaintiff did not make his mortgage payments for the next three months.  Defendant sent plaintiff notices of default on March 22, 2010, and April 8, 2010.

---

[3]     Although the Mortgage and the Note are neither attached to the amended complaint nor incorporated therein by reference, the Court may consider them in ruling on this motion because they are documents "of which plaintiff[] had knowledge and relied on in bringing suit." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

On or about April 1, 2010, plaintiff sent defendant his loan modification application. For the next eight months, plaintiff repeatedly inquired about the status of his application and provided updated financial information to facilitate defendant's review. Whenever plaintiff spoke with one of defendant's representatives, he was told his application "was in 'review,' or 'in staging,' or some variation thereof." (Id. ¶ 19).

In December 2010, defendant informed plaintiff his application had been denied "because he did not 'qualify'" for loan modification. (Id. ¶ 23).

Between January 15 and October 11, 2011, plaintiff sent defendant eight letters seeking information about the ownership and servicing of his loan. Plaintiff alleges defendant "failed and neglected to respond meaningfully" to his letters. (Id. ¶¶ 108-15). He further alleges he suffered "actual damages" as a result of defendant's failure to respond meaningfully, including "time spent and inconvenience[,] . . . emotional distress and mental anguish." (Id. ¶ 116).

The Note was assigned to Deutsche Bank Trust Company Americas, as Trustee RALI 2006-QA9 ("Deutsche Bank"), on August 20, 2012. Plaintiff claims defendant—as well as Merrill Lynch, Deutsche Bank, "and other mortgage lenders, mortgage brokers, salesmen and others whose identities are known only to Defendant at this time"—had ongoing business relationships and, to increase each other's profits, communicated regularly with each other, kept abreast of their collective business, and often strategically transferred or re-transferred loan notes among themselves. (Id. ¶¶ 50-51). According to plaintiff, they conspired to mislead homeowners into defaulting and remaining in default of their mortgage obligations.

**DISCUSSION**

I.     Standard of Review

"The function of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984) (internal quotation marks omitted).  In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the amended complaint under the "two-pronged approach" outlined by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the amended complaint must meet a standard of "plausibility."  Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

II.    Federal Claims

    A.     RICO

Plaintiff alleges defendant violated RICO Section 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  Thus, the statute prohibits "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted).

Defendant contends plaintiff has failed to allege a RICO enterprise.  The Court agrees.[4]

"A RICO enterprise may be a lawful entity or an association-in-fact." Kalimantano GmbH v. Motion in Time, Inc., 939 F. Supp. 2d 392, 405 (S.D.N.Y. 2013).  Plaintiff alleges an "association-in-fact" enterprise consisting of defendant, Merrill Lynch, Deutsche Bank, and other mortgage lenders, mortgage brokers, salesmen, and others whose identities are currently unknown to him.  "[F]or an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004) (internal quotation marks omitted).  To withstand a Rule 12(b)(6) motion, a plaintiff must "explain each participant's role in the alleged course of fraudulent or illegal conduct" to show the enterprise members "functioned as a unit." Id. at 174-75.

Plaintiff has had two opportunities to allege a RICO enterprise.  But, in the amended complaint, his only factual allegations relating to the enterprise are that its members had ongoing business relationships, had substantial reason to participate in the enterprise, communicated regularly with each other, were abreast of the enterprise's business, and regularly decided to transfer loan notes among themselves for strategic purposes. (Am. Compl. ¶¶ 50-51).  The

---

[4] Defendant also argues plaintiff has not satisfied RICO's "pattern of racketeering activity" requirement.  Because the Court holds plaintiff has not adequately pleaded an enterprise, it is not necessary to reach defendant's alternative argument.

5

amended complaint thus lacks any allegations about the role of any enterprise member, other than defendant, in the alleged fraudulent conduct. Even assuming the truth of these allegations, there is simply no basis to conclude the alleged enterprise members worked together as a unit to achieve a fraudulent purpose.

Accordingly, plaintiff's substantive RICO claim is dismissed.

B.     RICO Conspiracy

Plaintiff also accuses defendant of conspiring to violate RICO Section 1962(c). Because plaintiff has failed to state a substantive RICO claim, his conspiracy claim necessarily fails as well. First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d at 182.

Even assuming plaintiff had stated a substantive RICO claim, his RICO conspiracy claim nevertheless falls short. "The core of a RICO conspiracy is an agreement to commit predicate acts, and a RICO civil conspiracy complaint must specifically allege such an agreement." Elsevier Inc. v. W.H.P.R., Inc., 692 F. Supp. 2d 297, 313 (S.D.N.Y. 2010) (citing Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 25 (2d Cir. 1990)). The amended complaint does not identify any predicate acts Merrill Lynch, Deutsche Bank, and the other mortgage lenders, mortgage brokers, salesmen, and unknown conspirators agreed to commit.

Accordingly, plaintiff's RICO conspiracy claim is dismissed.

C.     ECOA

Plaintiff alleges defendant violated Section 1691(d)(1) and (d)(2) of ECOA by denying his loan modification application without notifying him of that denial within 30 days of receiving his application and without explaining in writing the basis of the denial.

Section 1691(d)(1) and (d)(2) provide, in pertinent part:

6

> (1) Within thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.
>
> (2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor.

15 U.S.C. § 1691(d)(1)-(2).[5] A creditor may take three "actions" under Section 1691(d)(1): approval, counteroffer, or adverse action. 12 C.F.R. § 202.9(a)(1)(i); <u>Diaz v. Paragon Motors of Woodside, Inc.</u>, 424 F. Supp. 2d 519, 532 (E.D.N.Y. 2006). The statute defines "adverse action" as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). But "[s]uch term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default," <u>id</u>., or "[a]ny action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account." 12 C.F.R. § 202.2(c)(2)(ii).

Defendant argues plaintiff's ECOA claim should be dismissed because he defaulted on his mortgage loan before applying for modification; therefore, denying his application was not an "adverse action" triggering the statute's notification and statement-of-reasons requirements. Although plaintiff does not dispute he was in default, he nevertheless asks the Court to overlook his default because, he claims, it was fraudulently induced, and thus it would be unfair to permit defendant to escape liability under ECOA on the basis of the default.

<u>Vasquez v. Bank of America, N.A.</u>, 2013 WL 6001924 (N.D. Cal. Nov. 12, 2013), is instructive. There, defendant moved to dismiss plaintiff's ECOA claim because plaintiff was in default on her mortgage loan when she applied for modification. <u>Id</u>. at *1, 12. Plaintiff insisted

---

[5] Defendant does not dispute that it is a "creditor" under ECOA, or that plaintiff submitted a "completed application for credit."

7

she "was not actually in default" because defendant had induced her to default by telling her "the only way to receive a loan modification was to be at least sixty days delinquent on her payments."  Id. at *2, 12.  The court dismissed the ECOA claim, reasoning that, under California's statute of frauds, defendant's oral representations could not trump the terms of plaintiff's loan, which required her to make monthly payments to avoid a default.  Id. at *12.  As the court explained, a plaintiff "cannot escape [15] U.S.C. § 1691(d)(6)'s bar by alleging an oral modification or waiver.  For purposes of applying ECOA's 'delinquent or otherwise in default' requirement, it seems most appropriate to apply the undisputed terms of the parties' agreement, even if one party invokes equitable principles to bar enforcement of those requirements."  Id.

The Court finds Vasquez's reasoning persuasive and adopts it.  Here, the Mortgage allowed plaintiff to change the amount of his monthly payments under the Note, but he would "still be fully obligated under the Note . . . unless [Merrill Lynch] agrees to release [him], in writing, from [his] obligations."  (Def.'s Decl. Ex. C, at 11).  In other words, plaintiff had a contractual duty to make his monthly mortgage payments until he was informed otherwise in writing—even if he sought, and his lender agreed, to modify his payments.  The alleged oral statement indicating plaintiff needed to default to qualify for loan modification thus flies in the face of the Mortgage's plain terms, which, under New York's Statute of Frauds, prevail over any contrary oral representations.  Marine Midland Bank, N.A. v. Cafferty, 174 A.D.2d 932, 935-36, 571 N.Y.S.2d 628, 632 (3d Dep't 1991).

Here, it thus "seems most appropriate to apply the undisputed terms of the parties' agreement, even if one party invokes equitable principles to bar enforcement of those requirements."  Vasquez v. Bank of America, N.A., 2013 WL 6001924, at *12.

Accordingly, plaintiff's ECOA claim is dismissed.

D.     RESPA

Plaintiff alleges defendant violated RESPA Section 2605(e) by failing to respond to his eight letters inquiring about the ownership and servicing of his mortgage loan.

"RESPA requires, inter alia, that servicers of 'federally related mortgage loans' respond in a prescribed time and manner to 'qualified written requests' ('QWRs') from borrowers and provides a private right of action for violations of the statute."[6] Roth v. CitiMortgage Inc., 2013 WL 5205775, at *4 (E.D.N.Y. Sept. 11, 2013) (alteration omitted).  The statute allows non-class-action plaintiffs to recoup "any actual damages . . . as a result of" a defendant's violations, and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1)(A)-(B).  Although RESPA permits recovery of both actual and statutory damages, "proof of actual damages is mandatory to recover on a § 2605(e) violation, and [] a § 2605(e) claim cannot stand on statutory damages alone." Selman v. CitiMortgage, Inc., 2013 WL 838193, at *9 n.10 (S.D. Ala. Mar. 5, 2013).

Defendant contends plaintiff has failed to state a RESPA claim because (i) plaintiff's letters were not QWRs; (ii) the amended complaint does not explain how the alleged violations caused "actual damages," which, in defendant's view, must be pecuniary; and (iii) plaintiff has failed to plead "a pattern or practice of noncompliance" justifying statutory damages.[7]

---

[6]     RESPA defines a QWR as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(i)-(ii).

[7]     Defendant further contends it did, in fact, respond to plaintiff's letters as required by RESPA, and has provided the Court with certain of its responses to substantiate its argument. (Def.'s Reply Decl. in Supp. of Mot. to Dismiss, Exs. A-D).  Because the Court holds plaintiff

Even assuming plaintiff's eight letters constitute QWRs to which defendant did not respond, thus establishing a pattern of noncompliance, and further assuming "actual damages" encompass both monetary and non-economic loss, plaintiff has failed to state a RESPA claim because he has not alleged how defendant's failure to respond caused any actual damages.

"A plaintiff seeking actual damages under § 2605 must allege that the damages were proximately caused by the defendant's violation of RESPA." Gorbaty v. Wells Fargo Bank, N.A., 2012 WL 1372260, at *5 (E.D.N.Y. Apr. 18, 2012). To that end, a plaintiff must offer "factual allegation[s] linking her alleged harms to [the defendant's] failure to timely respond to her QWRs." Id. "[S]imply saying that, for example, the servicer's failure to respond to a QWR caused damages without specifying how those damages were caused," is not enough to survive a motion to dismiss. In re Griffin, 2010 WL 3928610, at *6 (Bankr. S.D.N.Y. Aug. 31, 2010).

Plaintiff's alleged actual damages include "time spent and inconvenience" as well as "emotional distress and mental anguish." (Am. Compl. ¶ 116). But plaintiff "does not explain how these problems were caused specifically by [defendant's] alleged § 2605 violations." Gorbaty v. Wells Fargo Bank, N.A., 2012 WL 1372260, at *5 (emphasis added). Plaintiff offers only the conclusory assertion that he suffered actual damages as a result of defendant's failure to comply with RESPA.

Accordingly, plaintiff's RESPA claim is dismissed.

II. State Law Claims

Having dismissed plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(a). Oneida Indian Nation v. Madison Cnty., 665 F.3d 408, 437 (2d Cir. 2011) ("[W]e have repeatedly said that if a

---

has failed to state a RESPA claim, the Court need not convert defendant's motion to dismiss into a motion for summary judgment to consider defendant's responses. See Fed. R. Civ. P. 12(d).

plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well." (internal quotation marks omitted)).

Plaintiff's state law claims are therefore dismissed without prejudice.

## CONCLUSION

Defendant's motion to dismiss the amended complaint is GRANTED.

The Clerk is instructed to terminate the motion (Doc. # 20) and close this case.

Dated: January 13, 2014
       White Plains, NY

                    SO ORDERED:

                    _____
                    Vincent L. Briccetti
                    United States District Judge